**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN   DIVISION

| | | |
|---|---|---|
| DUSTIN MCDANIEL, Attorney General of the State of Arkansas | * * * | |
| Plaintiff | * * | |
| VS. | * * | |
| GENE LUDWIG | * * | |
| Defendant | * * | |
| GENE LUDWIG | * * | |
| Counter Claimant and Third Party Plaintiff | * * * * | NO: 4:08CV00193   SWW |
| VS. | * * | |
| DUSTIN MCDANIEL, Attorney General of the State of Arkansas | * * * | |
| Counter Defendant | * * | |
| UNITED STATES OF AMERICA, SECRETARY OF THE UNITED STATES ARMY, UNITED STATES CORPS OF ENGINEERS | * * * * * | |
| Third Party Defendants | * * * * * | |

**ORDER**

1

This case involves a dispute over real property.  Before the Court is the United States' motion for summary judgment (docket entry #13), seeking dismissal of the third-party complaint filed by Defendant, Counter Claimant, and Third Party Plaintiff Gene Ludwig ("Ludwig").  The time for responding has passed, and Ludwig has failed to file a response.  After careful consideration, and for the reasons that follow, the United States' motion for summary judgment will be granted, the third-party complaint will be dismissed with prejudice, and the remaining state law claims will be remanded to state court pursuant to 28 U.S.C. § 1367(c)(3).

**I.**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI*

*Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

**II.**

The State of Arkansas commenced this action in state court against Ludwig, seeking to quiet title to a part of the Little Maumelle River. The State also seeks injunctive relief requiring Ludwig to cease removing trees and vegetation located below the ordinary high water mark of the river and to repair and stabilize a portion of the river bank where Ludwig removed cypress trees and other vegetation.

Along with his answer, Ludwig filed a pleading entitled "Counterclaim and Third-Party Complaint," naming the United States as the third-party defendant. *See* docket entry #4. Ludwig alleges that in 2005, he purchased "a large number of acres including a portion of the Little Maumelle River . . . " from the John M. Hundley Family Partnership. *See* docket entry #4, ¶ 8. Ludwig states that the Hundley family owned the land many years prior to his purchase in 2005. He states that in 1968, the United States filed a declaration of taking and paid John Hundley and his wife $8,875 for a flowage easement and the right to overflow land lying above elevation 249. A copy of the declaration of taking, filed this federal district court on June 18, 1968, is attached to Ludwig's pleading.

Ludwig alleges that after the 1968 taking, the United States Corps of Engineers raised the high water mark of the river, which killed many large cypress trees. He states that a new river bank was established and new cypress trees grew on the bank. According to Ludwig, most of the new trees grow above the mean high water mark of the river and they "block the access, use, view, and breezes associated with Ludwig's water front property." *Id.*, ¶ 14. Ludwig states that he cut a portion of the trees, but "[n]o portion on any tree was cut below the mean high water

mark or below elevation 249." *Id*., ¶ 15.

Ludwig alleges that the State's claim to part of the river below the ordinary high water mark "conflicts with the property interests of the United States and also conflicts with [his] vested property rights . . . ." *Id*., ¶ 23. Additionally, he alleges that when he purchased the property, he had no knowledge of the declaration of taking by the United States. He states: "It was not discovered as part of [his] purchase process because the United States never filed the Declaration of Taking with the Pulaski County Clerk." *Id*., ¶ 19. Ludwig seeks, among other things, a declaration that he is not subject to the unrecorded declaration of taking.

## III.

The United States removed the case to federal court pursuant to 28 U.S.C. § 1442(a)(1), which allows the removal of any civil or criminal case against "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued ... for any act under color of such office." 28 U.S.C. § 1442(a)(1). In support of its motion for summary judgment, the Government states as follows:

> The only thing in dispute between Mr. Ludwig and the government is found in paragraph 38(f) of the Third Party Complaint, i.e., "Ludwig is not subject of this unrecorded Declaration of Taking."
>
> The fact that the Declaration of Taking was not filed in the Pulaski County Circuit Clerk's Office does not divest the government of title as against Mr. Ludwig. *See Norman Lumber Company v. U.S.* 223, F. 2d 868 (4th Cir. 1955) and *U.S. v. Haddon*, 550 F. 2d 677 (1st Cir. 1977). Also note, *U.S. v. Herring*, 750 F.2d 669 (8th Cir. 1984).
>
> Also weighing against Mr. Ludwig is that a Lis Pendens in the 1968 condemnation case was filed with the Circuit Clerk of Pulaski County.
>
> Whoever did the title search for Mr. Ludwig or his lender could have done a thorough job and found it. Then they should have walked six and a half blocks to the District Clerk's office and had the 1968 case retrieved to see what had happened

> in that case and its effect on title. The Declaration of Taking should have been an exception to Mr. Ludwig's title policy.  One could say that it was hiding there in plain sight.
>
> The other issues are between the State and Mr. Ludwig, and the government is not a necessary party. Whoever wins doesn't affect the government's right under its flowage easement.

Docket entry #14.

Under the Declaration of Taking Act, codified at 40 U.S.C. § 3114 (formerly 40 U.S.C. § 258(a)), once a declaration of a taking by the United States is filed and money for compensation is deposited in the appropriate court, title to the estate or interest specified in the declaration immediately vests in the United States, subject only to the right of the owner to receive just compensation.  See 40 U.S.C. § 3114(b), *see also Long v. Area Manager, Bureau of Reclamation,*  236 F.3d 910, 913 (8th Cir. 2001).  Even if a property owner receives improper notice of the condemnation proceeding, it does not affect the government's absolute ownership of the condemned land, and the property owner has, at best, a right to compensation.  *See Fulcher v. United States*, 696 F.2d 1073, 1075 (4th Cir. 1982).

In this case, it is undisputed that the United States filed a declaration of taking and deposited funds for compensation in accordance with the Declaration of Taking Act.  Ludwig, who was not the property owner at the time of the  taking, does not claim that he is entitled to compensation.  As the Government points out,  Ludwig's sole claim against the United States is that he is not subject to the declaration of taking because it was not recorded.  Because the United States cannot be divested of its title, Ludwig is subject to the declaration, and the United States is entitled to summary judgment.

Even if Ludwig stated a viable claim against the United States, his cause of action would

be time-barred. The Quiet Title Act ("QTA") provides a limited waiver of sovereign immunity and provides "'the exclusive means by which adverse claimants can challenge the United States' title to real property.'" *Spirit Lake Tribe v. North Dakota,* 262 F.3d 732, 737 (8th Cir. 2001)(quoting *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286, 103 S.Ct. 1811(1983)). The QTA contains a twelve-year statute of limitations, which acts as a jurisdictional bar. *See Spirit Lake Tribe*, 262 F.3d at 738. The limitation period begins when "the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g).

Ludwig does not dispute that his predecessor in interest had actual notice of the United States' declaration of taking in 1968. In fact, he alleges the United States paid the Hundleys $8,875 for the flowage easement. Docket entry #4, ¶ 11. Ludwig's claim that *he* had no knowledge of the United States' interest is irrelevant because the QTA provides that an "action shall be deemed to have accrued on the date the plaintiff *or his predecessor in interest* knew or should have known of the claim against the United States." 28 U.S.C. § 2409a(g). The property transfer from the Hundleys to Ludwig did not reopen the limitations period. *See Long v. Area Manager, Bureau of Reclamation,* 236 F.3d 910, 914-15 (8th Cir. 2001)(QTA limitations period began when plaintiff's predecessor in interest had notice of condemnation proceedings).

The Court finds that because Ludwig's predecessor in interest had knowledge of the United States' claim in 1968, the limitations period began to run at that time. Ludwig filed his third-party complaint 40 years after the limitations period began running, and his claim is time-barred.

Finally, the Court notes that Ludwig cannot bring a third-party action against the United

States based on his assertion that the State's claim conflicts with the United States' property interests.  Federal Rule of Civil Procedure 14, which governs impleader, or third-party practice, provides that a defending party may bring a third-party complaint against "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the [original] plaintiff's claim against the third-party plaintiff."  Thus, Ludwig may bring a third party complaint against the United States only if the United States will be liable to him if he is found liable to the State.  *See* 6 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1442 (2d. ed. 1990)(noting that impleader under Rule 14(a) "is available only against persons who are or may be liable to defendant for part or all of plaintiff's claim; it cannot be used as a way of combining all controversies having a common relationship in one action").  In this case, there is no possibility that the United States will be liable to Ludwig.

## IV.

For the reasons stated, the United States' motion for summary judgment (docket entry #13) is GRANTED, the third-party complaint is DISMISSED WITH PREJUDICE, and the United States is dismissed as a party to this action.  Having dismissed all claims over which the Court has original jurisdiction under 28 U.S.C. § 1442(a)(1), the Court declines to exercise supplemental jurisdiction over the remaining state-law claims and therefore REMANDS this action to the Circuit Court of Pulaski County, Arkansas.  *See* 28 U.S.C. § 1367; *see also Lindsey v. Dillard's, Inc*.  306 F.3d 596 (8th Cir.  2002)(finding remand proper in removed case based on district court's discretionary decision not to exercise supplemental jurisdiction).

IT IS SO ORDERED THIS 7TH DAY OF JULY, 2008.

                                             <u>/s/Susan Webber Wright</u>
                                             UNITED STATES DISTRICT JUDGE